UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| SRINIVASA RAO KAMBALA, et al<br>Plaintiffs | * | Case No: 1:13-cv-00498 RC-ZJH |
| | * | |
| vs. | * | |
| | * | |
| SIGNAL INTERNATIONAL, LLC, et al,<br>Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.12(B)(6)
OF MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C.,
AND GULF COAST IMMIGRATION LAW CENTER, L.L.C.,
AND
MEMORANDUM IN SUPPORT

May It Please the Court,

Plaintiffs' Complaint fails to state a cause of action against any of the Burnett Defendants. Plaintiffs' Complaint against Burnett alleges federal causes of action under the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. 1589 and 18 U.S.C. 1590, (TVPA), RICO, 18.U.S.C. 1962 (d), and the Ku Klux Klan Act, 42 U.S.C. 1985 (KKCA), and assert state claims of Fraud and Negligent Misrepresentation, and Breach of Contract. Plaintiffs have not stated any cause of action against Burnett beyond unsupported and unsupportable conclusions and talismanic recital of statutory language, and even then by only general conclusory allegations as to all defendants. Plaintiffs have not pled the allegations of fraud with respect to

representations with the specificity required by Rule 9 deportation satisfies the definition of involuntary servitude. As a matter of law, the threat of deportation does not satisfy a determination of involuntary servitude. See Zavala v. Wal Mart Stores Inc., 691 F.3d 527, (3rd Cir., 2012). Likewise, under the applicable federal immigration and labor regulations existing at the time, there was no prohibition against requiring non-immigrant workers to pay recruitment fees, legal fees, and travel costs. See Valdez-Baez v. Decatur Hotels, LLC, 622 F.3d 393 (5th. Cir., 2010).

Further, the facts recited in support the state based causes of action under state law are alleged to have occurred in India or the United Arab Emirates. With the alleged conduct being extraterritorial, neither the laws of the state of Texas nor the state of Mississippi could not apply any more than it could to an automobile accident that occurred in a foreign country.

Moreover, even should any of the alleged actionable conduct have happened in Texas, Mississippi, or Louisiana, the statute of limitations on the actions asserted have run on the face of the Complaint. The Complaint alleges that shortly after March 9, 2007, the Plaintiffs herein knew of everything that had taken place in Mississippi, and that ma number of the workers .

> Other Indian H-2B workers, including these Plaintiffs, working at Signal's Orange facilities rapidly learned of the events at the Pascagoula labor camp on March 9, 2007. In response and out of fear for their continued well-being, some workers surreptitiously fled both camps. (Plaintiffs' Complaint ¶ 263)

The statute of limitations on any actionable conduct by Burnett in Texas, as well as in Mississippi, would be three years under the state based causes of action alleged against Burnett.

Unless there had been a tolling of the statute of limitations, which was no pled in the Complaint, on the face of the Complaint, the statute of limitations for state based causes of action would have run shortly after March 9, 2010. This action was not filed until October 13, 2013, more than three years afer the statute of limitations would have run.

The various paragraphs in Plaintiffs' First, and Fourth Claims for Relief against Burnett contain Plaintiff's conclusions that "Defendants", without specific mention of Burnett, violated the TVPA and the KKKA, but offer no facts from which such a conclusion could even be drawn, much less facts that would support such allegations. Rather they simply state conclusions that Defendants, ostensibly including Burnett, "attempted to and did subject Plaintiffs to force labor", "controlled Plaintiffs' ability to meet basic needs", "forced Plaintiffs to live in guarded and gated camps", and allegedly "motivated by racial, anti-Indian, and/or anti-immigrant animus", supposedly schemed to and did deprive Plaintiffs of their rights, without any specific statement of fact against Burnett that would so much as infer such conduct.

Yet, the paragraphs of Plaintiffs complaint that contained specific alleged facts as to Plaintiffs stay and employment were limited to Signal's conduct. The Complaint established that Signal employed, housed, and provided the living accommodations and food for Plaintiffs, not Burnett. Under the well pleaded facts of the Complaint, Signal controlled the conditions and work place environment, not Burnett.

The initial allegations of the complaint establish that Burnett was hired as an attorney to perform immigration services for Signal. He obviously performed the services necessary to

allow the Plaintiffs to legally enter the United States, as all Plaintiffs allege they arrived in the United States and were employed by Signal at its Orange, Texas facility.  Performing services as an attorney for  Signal does not, without a lot further factual allegations, amount to Burnett being culpable for trafficking of forced labor.  On the other hand, those paragraphs in Plaintiffs' Complaints that do mention Burnett specifically, even if established,  do not demonstrate any illegal act or conduct by Burnett or any intent to commit an illegal act, much less any conspiracy by Burnett to traffic Plaintiffs or deprive them of their civil rights.  More than mere conclusions are needed.

The United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and again in Ashcroft v. Iqbal, 556 U.S. 662 129 S.Ct. 1937, 173 L.Ed2d 868 (2009)visited the issue of what is required to state a claim upon which relief can be  based.  Mere conclusions and allegations of "the-defendant-unlawfully-harmed-me accusation" are insufficient. Where the facts merely support a "possibility" that the defendant acted unlawfully, the complaint fails to state a claim upon which relief can be granted.

> As the Court held in Twombly, 550 U.S.544,127 S.Ct. 1955,167 L.Ed.2d 929,the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation.(citations omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555,127 S.Ct. 1955.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

> defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

Ashcroft v. Iqbal, 556 U.S. 662, at 678, 129 S.Ct. 1937, 173 L.Ed2d 868 (2009).

The United States Supreme Court in Ashcroft, supra, provided a blueprint as to how courts should proceed when faced with a Rule 12(b)(6) motion to dismiss based on a complaint fraught with conclusory allegations as found herein.

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft at 679.

This is exactly the manner in which the Supreme Court addressed the issue in <u>Ashcroft</u>. Therein, not unlike the allegations herein, Plaintiffs claimed that there arrest and detention was based on race, religion, and national origin, that the arrest were intentional and purposeful because of these unlawful discriminatory motives.  The Supreme Court first identified those allegations that were mere unsupported conclusions, and then examined the factual allegations to determine if those factual allegations plausibly stated a cause of action.

> We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh

> conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." Complaint ¶ 96, App. to Pet. for Cert. 173a–174a. The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, id., ¶ 10, at 157a, and that Mueller was "instrumental" in adopting and executing it, id., ¶ 11, at 157a. These bare assertions, much like the pleading of conspiracy in Twombly, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, 550 U.S., at 555, 127 S.Ct. 1955, namely, that petitioners adopted a policy " 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Feeney, 442 U.S., at 279, 99 S.Ct. 2282. As such, the allegations are conclusory and not entitled to be assumed true.
>
> We next consider the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief. The complaint alleges that "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11." Complaint ¶ 47, App. to Pet. for Cert. 164a. It further claims that "[t]he policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." Id., ¶ 69, at 168a. Taken as true, these allegations are consistent with petitioners' purposefully designating detainees "of high interest" because of their race, religion, or national origin. But given more likely explanations, they do not plausibly establish this purpose.
>
> . . .
>
> As between that "obvious alternative explanation" for the arrests, Twombly, supra, at 567, 127 S.Ct. 1955, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.

<u>Ashcroft, supra</u>, at 680-682., emphasis added.

The same analysis if performed here likewise results in the inescapable conclusion that the few factual allegations of Plaintiffs' as to Burnett do not plausibly establish a cause of action against him.  The allegations of human trafficking and denial of Plaintiffs' civil rights are all mere conclusion and are not assumed to be true.  The remaining factual allegations against Burnett only establish that he acted as an attorney, that he successfully completed and filed all

necessary immigration documents to allow Plaintiffs to legally enter the United States, that Plaintiffs did enter the United States and did in fact have employment with Signal. Whatever may have happened with Plaintiffs' employment by Signal, their workplace conditions or living accommodations have nothing to do with Burnett, and beyond being lumped in to the conclusory allegations against "Defendants", there are no facts to support any such allegation.

Plaintiffs' First Claim for Relief against all Defendants, though not specifically mentioning Burnett, assert various conclusions of forced labor, human trafficking, and peonage, but nowhere state any specific facts to support these conclusions, especially as to Burnett against whom there are no factual allegations that he had anything to do with Plaintiffs' working and living conditions. Paragraph 289 of Plaintiffs' complaint, in the First claim for Relief claim for relief, reads, "Defendants attempted to and did subject Plaintiffs to forced labor in violation of 18 U.S.C. 1589." Yet, not one fact is listed as to Burnett as to any conduct or actions on Burnett's part that would support such a claim. Burnett did not employ Plaintiffs. He did not house Plaintiffs. He did not control their living or working conditions, their wages or any aspect of their employment, and no factual allegations of him doing so are made anywhere in the Complaint. The paragraphs following, paragraphs 349 through 359, likewise are but one conclusory statement after another as to all Defendants generally, though no specific mention is made of Burnett. Again, the Complaint in devoid of one fact as to Burnett that would support such conclusions.

There are no facts pled that show any planning, scheming, or conspiring by Burnett with

any Defendant or other person. In fact, in the general allegations of the Complaint Burnett is rarely mentioned, but rather simply lumped in with all "Defendants". Some of the paragraphs allege that Burnett was present at meetings where general information was conveyed, but even those do paragraphs do not allege that Burnett made the informational representations. More importantly, not even these informational representations set forth facts that would support the allegations of Plaintiffs being "coerced Plaintiffs into paying substantial recruitment fees prior to hiring Plaintiffs". All conduct, actions, and communications alleged to have been made by Burnett are of the type one would expect of an attorney who was going to perform the necessary immigration filings to for Plaintiffs to lawfully enter the United States.

Similarly, Plaintiffs' third Claim fro Relief, Violations of the Ku Klux Klan Act of 1871, make absolutely no factual assertions whatsoever. Each and every paragraph is an unsupported conclusion. Nowhere in the Complaint are any facts pled that would even infer that Burnett "conspired, agreed, planned and coordinated for . . . the purpose of depriving Plaintiffs of equal protection of their rights"., or that Burnett was "motivated by racial, anti-Indian, and/or anti-immigration animus", or that he somehow "planned and acted to deprive Plaintiffs of their rights". To the contrary, the specific factual statements as to what Burnett did demonstrates exactly the opposite, that he did everything in his ability to see that Plaintiffs were afforded the right to enter the United States legally. It is quite an oxymoron to suggest that Burnett did what was necessary to have Plaintiffs legally enter the United States from India on the one hand, just to then allege that he was motivated by "racial, and/or anti-immigration animus". The

conclusory statements in this claim for relief are without any factual support, either.

The same is true of Plaintiffs' claims of mail and wire fraud. First, Rule 9 requires all allegations of fraud be alleged with specificity. However, "[general] allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another, do not meet the requirements of Rule 9(b)." <u>Patel v. Holiday Hospitality Franchising</u>, 172 F. Supp.2d 821, 824 (N.D. Tex. 2001). There is no such specificity of how anything Burnett is alleged to have said, which is very little under the factual allegations of the Complaint, would support an intent to defraud. This seems especially true since Plaintiffs have alleged that they could not understand English, and it is not even alleged that Burnett ever tried speaking to them in any Indian dialect. To the contrary, the totality of the facts provided show that quite a lot of work in the preparation of H-2B visa applications was performed by Burnett. The factual allegations as a whole, that Plaintiffs legally entered the United States to work for Signal, that there were H-2B visa extensions, which would have been accomplished through the services of Burnett, does not support any conclusion of deceit or an intent to deceive.

The same is true of the allegations of state based misrepresentations and breach of contract. To the contrary, as indicated above, the totality of the facts support a fulfillment of Burnett's obligations to the Plaintiffs, and no intent to defraud or deceive. The mere conclusions of misrepresentations and conclusory allegations of breach of contract are simply not supported by any factual allegations. The entirety of Plaintiffs' Complaint against Burnett

"stops short of the line between possibility and plausibility of 'entitlement to relief.'"

If the same analysis is performed herein, as the Supreme Court did in <u>Ashcroft, supra</u>, the inescapable conclusion is reached that the few factual allegations of Plaintiffs' as to Burnett do not plausibly establish a cause of action against him. The allegations of human trafficking and denial of Plaintiffs' civil rights are all mere conclusion and are not assumed to be true. The remaining factual allegations against Burnett only establish that he acted as an attorney, that he successfully completed and filed all necessary immigration documents to allow Plaintiffs to legally enter the United States, that Plaintiffs did enter the United States and did in fact have employment with Signal.

Whatever may have happened with Plaintiffs' employment by Signal, their workplace conditions or living accommodations had nothing to do with Burnett, and beyond being lumped in to the conclusory allegations against "Defendants", there are no facts to support any such allegation. The same is true of the alleged mail and wire fraud, under the alleged predicate acts required by RICO. There are legal conclusions asserted by Plaintiffs, but no specifics upon which such conclusions could be drawn. When determining whether a fraud claim should be dismissed for lack of particularity, "the Rule 9(b) standards require a party to plead with specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation as to why they are fraudulent. <u>Plotkin v. IP Axess, Inc.</u>, 407 F.3d 690, 696 (5th Cir. 2005). None of those requirements are met anywhere in Plaintiffs' Complaint.

Likewise the allegations of fraud and negligent misrepresentation and breach of contract fail to set forth anything beyond conclusions of Plaintiffs' counsel. The legal conclusions that Burnett breached a contract with Plaintiffs or that there was fraud or negligent misrepresentation are but legal conclusions of Plaintiffs' counsel and are not assumed to be correct. The factual allegations remaining against Burnett support only a conclusion that he fulfilled all representations made by him and all contractual obligations he may have owed. The allegations against Burnett are simply not probable. This is especially true when weighed against the obvious alternative conclusion that results from the whole of Plaintiffs allegations, that is, that they all lawfully entered the United States and had the opportunity to work for

Signal because of his efforts and the fulfilment of his obligations.

Moreover, the Complaint on its face establishes that, irrespective of which state Plaintiffs eventually try to establish their state law causes of action, Texas, Louisiana or Mississippi, the applicable statute of limitations would have run.

The seminal case of Erie Railway Co. v. Tompkins, 304 U.S.64,71–80,58 S.Ct.817,82 L.Ed.1188 (1938),and its long progeny require that federal courts exercising diversity jurisdiction must apply as their rules of decision the substantive law of the states. In Guaranty Trust Co of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, (1945), the United States Supreme Court specifically held that federal courts deciding state based claims must apply the state's laws on statutes of limitations.

> But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.
> . . .
> Such particular rules of local law, however, do not in the slightest change the crucial consideration that if a plea of the statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery.

Guaranty Trust , supra, p. 108 -109, 110. (Emphasis added).

In, Ellis v. Great Southwestern Corp, 646 F.2d 1099 (5th Cir.,1981) the Fifth Circuit, as it must, has followed this pronouncement.

> Our starting point in this case, as in all cases in which subject-matter jurisdiction is premised on diversity of citizenship, is Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in which the Supreme Court held that there is no federal general common law and that a federal court must apply the laws of the state in which it sits except in those cases governed by the

> Constitution or laws of the United States. Two of Erie's progeny are particularly relevant. In Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the Court confirmed that the Erie doctrine extends to state statutes of limitations. And in Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Court confirmed that the Erie doctrine means also that as a general matter, a federal court is bound to apply the choice of law rules of the state in which it sits in determining whether that state's or some different state's substantive law should govern.

Ellis v. Great Southwestern Corp., 646 F.2d 1099 (5th Cir.,1981).

The Fifth Circuit Court of appeal in Hulin v. Fibreboard Corp., 178 F.3d 316 (5th Cir. 1999), again emphasized that in matters of state based claims, it is state law that applies.

> Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern.

Hulin, supra at 317.

Whether or not the filing of a class action in federal court where the class certification is denied tolls any state based statute of limitations can only be decided by applying state law. Federal courts simply do not have the power to do otherwise. There is no federal common law; there is no power or authority of federal courts to declare substantive rules to state based claims different from what the state legislature or highest court dictates. A federal court may not simply do what it thinks is best, or equitable, or most appropriate for a state based claim, but rather, must do what the state's highest court would do, or if no directly applicable decision is available, what the highest court would most likely do.

> As a federal court, "it is not for us to adopt innovative theories of [state law], but simply to apply that law as it currently exists," Galindo v. Precision American Corp., 754 F.2d 1212, 1217 (5th Cir.1985), and to rule as we believe the state's

> highest tribunal would rule, Green, 612 F.2d at 214. We are emphatically not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best. See, e.g., United States v. Little Joe Trawlers, Inc., 776 F.2d 1249, 1253 (5th Cir.1985) ("In our Erie role, we make no value judgments as to what [Mississippi] law ought to be."). If the law of Mississippi is to be changed, "[i]t is up to the Supreme Court of [Mississippi] and not this court to change the substantive law of that state." Cargill, Inc. v. Offshore Logistics, Inc., 615 F.2d 212, 215 (5th Cir.1980). Finally, "under Erie we cannot skirt the clear import of state decisional law solely because the result is harsh." Parson v. United States, 460 F.2d 228, 234 (5th Cir.1972).

Jackson v. Johns-Manville Sales Corp., 781 F.2d 394, 397-98 (5th Cir., 1986), (en banc), abrogated in part on other grounds by Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991). See also Learmonth v. Sears, Roebuck & Co., 710 F.3d 249 (5th. Cir., 2013); Colony Nat'l Ins. Co. v. Unique Indus. Prod. Co., No. 11 -20355, unpublished decision, (5th. Cir., 2012).

As such, federal courts simply do not have the power to grant equitable tolling of a state statute of limitation on a state based claim by members of a putative federal class action in which class certification was denied if such is contrary to the law of the state. It is not for this Court to decide if the result is harsh, or if the state law should be different. Rather, this Court must apply the statute of limitations of the applicable state's law, and not make a declaration of substantive law on state causes of action. As such, this Court, on the claims based on state claims, must look to the laws of the state in which it is sitting, including the applicable state's law as to the tolling of the statute of limitations by the filing of a federal class action in which class certification was denied.

With no tolling of the statute of limitations, taking the allegations of Plaintiffs' Complaint as to when they were aware of the facts supporting their respective causes of action, the statute of limitations on both the Texas and the Mississippi causes of action for all of the

Plaintiffs would have run shortly after March 9, 2010. For any cause of action under Louisiana law, the statute of limitations would have run shortly after March 9, 2008. This action was filed on October 3, 2013, well after the running of the statute of limitations in any of the three states with some connection to the facts of this case.

On the face of the Complaint there is nothing that demonstrates any tolling of the applicable statute of limitations. There is no allegation or mention of any tolling of the statute of limitations. Nor is there any mention in the Complaint of David class action, in which Plaintiffs were putative class members. However class certification in David was denied.

The Supreme Court of the state of Louisiana has specifically held that there is no "cross-jurisdictional tolling" from a federal class action proceedings in which class certification was denied. Quinn v. Louisiana Citizens Property Ins. Corp., 12-0152 (La. 11/2/12), ___So. 3d___, 2012 WL 5374255, reh'g denied, (La. 1/25/13), ___So. 3d ___. Likewise, in Bell v. Showa Denko K.K., 899 S.W.2d 749, at 757-58 (Tex.App.-Amarillo, 1995), a Texas appellate court did not allow for cross jurisdictional tolling by the filing of a federal class action in another state. In Newby v. Enron Corp., 542 F.3d 463, at 472 (5th. Cir., 2008), the Fifth Circuit, affirming the dismissal of state based actions based on running of the statute of limitations specifically stated that the lower court "correctly concluded that, based on our understanding of Texas law, the Texas courts likely will not extend American Pipe tolling to this situation."

While there are no direct cases in Mississippi dealing with cross tolling of the statute of limitations, the state of Mississippi does not allow for or have a state class action at all. U S F &G

Ins. Co. of Miss. v. Walls, 911 So.2d 463 (MS, 2005). As to tolling of the statute of limitations by the filing of a suit that is later dismissed without prejudice, the Mississippi Supreme Court has held that when a case is dismissed without prejudice, its filing has no effect on the tolling of the statute of limitations.

> This Court held long ago, however, that "[t]he dismissal of a suit without prejudice 'does not... confer any new right or advantage on the [plaintiff], and hence it will not have the effect of excepting from the period prescribed by the statute of limitations, the time during which that suit was pending.'" W.T. Raleigh Co. v. Barnes, 109 So. 8, 9 (Miss. 1926) (quoting Nevitt v. Bacon, 32 Miss. 212, 66 Am. Dec. 609 (1856)). In other words, "when a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit...."

Clark Sand Co. v. Kelley, ___ So.2d___, no. 2008-IA-01437-SCT, (Miss., 2011).

For any Mississippi state cause of action, Plaintiffs, as putative class members in David, would be in the same position as though their claims had been dismissed without prejudice when the class certification was denied. They were all able at that time to re-file the claims and causes of action individually. Under the holding and reasoning of Kelly, supra, the filing of the federal class action in David would have had no effect on the tolling of the statute of limitations. It is submitted that based on the jurisprudence of the Mississippi Supreme Court, it, too, would not recognize cross-jurisdictional tolling.

Moreover, all of the alleged conduct that is asserted as support of the state based causes of action occurred in India or the United Arab Emirates. If there is any cause of action for the conduct alleged it would have to be under either Indian or Arabian law. There is no assertion that either country would afford Plaintiffs relief for the conduct asserted in Plaintiffs'

Complaint. In fact, given the totality of the allegations, and the very few factual assertions of conduct by Burnett, it is submitted that there was no actionable conduct by Burnett under either country's laws.

Burnett asserts that Plaintiffs' Complaint have fallen short of "the line between possibility and plausibility of 'entitlement to relief.' "Ashcroft v. Iqbal, 556 U.S. 662 129 S.Ct. 1937, 173 L.Ed2d 868 (2009).

Wherefore, Malvern C. Burnett, The Law Offices of Malvern C. Burnett, A.P.C. ,and the Gulf Coast Immigration Law Center, LLC pray that its Motion to dismiss for lack of personal jurisdiction be granted, and additionally, Plaintiffs Complaint be dismissed pursuant to Rule 12(b)(6) for failure to state a cause of action upon which relief can be granted.

    Respectfully submitted,

    <u>s/ Timothy W. Cerniglia</u>
    Timothy W. Cerniglia (TX Bar# 00789930)
    1521 St. Charles Avenue
    New Orleans, Louisiana 70130
    Office: 504-586-0555
    Facsimile: 504-586-0550

    Attorneys for Malvern C. Burnett,
    The Law Offices of Malvern C. Burnett, A.P.C. ,
    and the Gulf Coast Immigration Law Center, L.L.C.

CERTIFICATE OF SERVICE

This is to certify that a copy of this motion has been served electronically on Plaintiffs and the Signal Defendants with the Clerk of court using the CM/ECF system this 21st day of March, 2014.

s/ Timothy W. Cerniglia