## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| SRINIVASA RAO KAMBALA, *et al.* | § | |
| | § | |
| Plaintiffs. | § | |
| v. | § | Case No. 1:13-cv-00498-RC-ZJH |
| | § | |
| SIGNAL INTERNATIONAL LLC, *et al.* | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) of MALVERN C. BURNETT; THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C.; AND GULF COAST IMMIGRATION LAW CENTER

Christopher J. Willett (Texas Bar No. 24061895)
Kayvon Sabourian (Texas Bar No. 24076824)
(admitted by *pro hac vice*)

EQUAL JUSTICE CENTER AND
TRANSNATIONAL WORKER RIGHTS CLINIC
510 S. Congress Ave., Suite 206
Austin, TX 78704
Telephone: 512-474-0007, ext. 107
Facsimile: 512-474-0008
Email: cwillett@equaljusticecenter.org

*Attorneys for Plaintiffs*

1

# I.   INTRODUCTION

Defendants Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C. (collectively, "Burnett" or the "Burnett Defendants") have moved to dismiss Plaintiffs' Complaint, which alleges various federal and state law causes of action against the Burnett Defendants for their role in the labor trafficking scheme, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Motion should be denied.

The Burnett Defendants' Motion is premised on three arguments. First, the Burnett Defendants argue that Plaintiffs have not pled sufficient factual allegations to support their claims because the Complaint states mere conclusory allegations for the federal causes of action ("Federal Law Claims") and that some of Plaintiffs' claims fail because they rest entirely on the conclusion that being required to work under threat of deportation constitutes involuntary servitude.   Second, Burnett argues that Plaintiffs' allegations do not support a breach of Plaintiffs' state common law causes of action ("Common Law Claims") and that Plaintiffs' Common Law Claims have lapsed under the applicable statute of limitations. All of these arguments are fatally flawed and must fail.

Plaintiffs' 404-paragraph complaint and accompanying RICO fraud chart are replete with facts detailing the illegal, tortious acts committed by the Burnett Defendants in furtherance of a labor trafficking scheme that violated federal and state law. The Complaint explicitly alleges that Burnett and the Burnett Defendants played an integral role in the labor trafficking scheme designed to recruit Plaintiffs for work at Signal based on false promises of permanent residency in the United States. Based on these false promises made by Defendants, including the Burnett Defendants, Plaintiffs sold everything they had an borrowed significant amounts to pay the exorbitant fees Defendants charged them to come to Texas to work for Signal. Upon arrival in Texas, Plaintiffs were subject to appalling work and living conditions in Signal's labor camp in Orange, Texas.   At

this preliminary stage, where these factual allegations are presumed true, the Complaint adequately states Federal Law Claims and Common Law Claims.

Further, Plaintiffs' Common Law Claims are not barred by any statute of limitations. The statute of limitations have been tolled, and Texas recognizes such tolling. Accordingly, the Burnett Defendants' motion should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    THE DEFENDANTS' LABOR TRAFFICKING SCHEME.

The Burnett Defendants were central participants in a complex labor trafficking scheme planned and executed by and among the Defendants in this case.  Signal is a Gulf Coast-based marine and fabrication company with facilities in Orange, Texas; Pascagoula, Mississippi; and Mobile, Alabama. Plaintiffs; 1st Am. Compl. ("Compl.") at ¶3, ECF No. 6.  Plaintiffs were among approximately 590 Indian workers lured to the United States by Signal and Signal's network of recruiters working on its behalf, including the Burnett Defendants, with false promises of permanent residency in the United States for Plaintiffs and their families, in order to perform welding and pipefitting work at Signal's facilities in Orange, Texas, located in this District. Id., at ¶1.

Plaintiffs are nineteen individuals whom the Defendants trafficked from India into the United States on the basis of blatant lies. Id.  Eighteen of the Plaintiffs were trafficked into this District to work at Signal's Orange, Texas facility. Id. ¶¶ 26, 28-44, 194. Eleven of the Plaintiffs were then forced to work many months at Signal's Orange, Texas facility under deplorable, inhumane conditions. Id. ¶¶ 194, 199-214.  Seven of the Plaintiffs were completely refused employment upon arrival at Signal's Orange, Texas facility despite the promises made to them which induced them to make payments, as described below. Id. ¶¶ 13, 28-29, 33, 39-41, 43, 194,

281, 282.   Plaintiff Gonna was forced to work many months at Signal's Pascagoula, Mississippi facility under deplorable, inhumane conditions. *Id.* ¶¶ 27, 194, 199-214.

To induce Plaintiffs, the Defendants, including Burnett, misrepresented to each of these Plaintiffs that, if he would pay to Defendants substantial sums (between $10,000.00 and $24,000.00) and agree to travel to the United States and work for Signal, Signal and other Defendants would obtain for him and his family green cards for permanent residence in the United States. *Id.* ¶¶ 8, 10, 100, 104, 109, 116.   Rather than apply for green cards or other immigration visas for the Plaintiffs, Signal applied for H-2B visas. *Id.* ¶¶ 7, 130, 144-145.   H-2B visas differed significantly from green cards and other types of immigration visas, because under H-2B visas, if the Plaintiffs quit or were fired from their jobs at Signal, Signal could immediately deport them. *Id.* ¶¶ 131, 137-139, 147, 151. In fact, when some of Plaintiffs' coworkers in Signal's Pascagoula, Mississippi plant complained about working conditions, Signal attempted to have them immediately deported. *Id.* ¶¶ 226-230, 235, 237.

To obtain H-2B visas for the Plaintiffs, Signal faced the significant obstacle of proving to the federal government that no skilled laborers existed in the Orange, Texas area to fill the positions where they were seeking to employ the Plaintiffs.[1]   Signal and Burnett filed paperwork and made misrepresentations to the Texas Workforce Commission to obtain H-2B visas. *Id.*, ¶¶ 132-133.

When Plaintiffs arrived at Signal's facilities, the Plaintiffs were treated in a degrading, discriminatory manner. Compl. ¶¶ 12, 212, 214, 349, 351, 353-355. At the job site, Signal

---

[1] Nearly three decades ago, the U.S. Supreme Court acknowledged that the "obvious point" of the statutory and regulatory frameworks governing H-2 programs is to provide an assurance to U.S. workers that "these workers are given a preference over foreign workers for jobs that become available within this country." *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 596 (1982).  In enacting the Immigration Reform and Control Act of 1986, which divided the agricultural H-2A form the nonagricultural H-2B program, Congress stressed that "[t]he essential feature of the H-2B program has been and would continue to be that efforts be made to find domestic workers before admitting workers from abroad."  House Report 99-682(i), 1987 U.S. Code Cong. & Adm. News 5684.

continued to lie to the Plaintiffs about their prospects for a green card.  The conditions in the "man camp" in which they were required to live (for the majority, in this District) – and to pay for out of their meager wages – were worse than squalid. *Id.* ¶¶ 199-212. The Plaintiffs were trapped here by the huge debts they incurred to pay for the promised green cards, and by the fact that the H-2B visas through which they were actually trafficked here permitted them to work only for Signal. *Id.* ¶¶ 225, 277-278.   Burnett and his co-Defendants never had the least intention or capability of obtaining green cards for them.  *Id.* ¶¶ 145, 283.

## B.    BURNETT'S ROLE IN THE SCHEME

The Burnett Defendants played an integral role in the illegal and tortious labor trafficking scheme. The Complaint and incorporated RICO Fraud Chart provide numerous specific and detailed allegations of Burnett's prominent role in facilitating the labor trafficking scheme.  Compl. ¶¶ 2, 4, 58-59, 61-65, 67-71, 90, 92, 98-99, 101, 103-133, 141-144, 146-152, 159-162, 169-170, 173-175, 177-179, 192, 195-196, 231-232, 237-238, 240, 272, 274, 284 ; Compl. Ex. 1 ¶¶ F5, F11, F12, F15, F17, F19, F20, F21, F22, F32, F34, F35, F37, F40, F43, F44, F50, F56, F63, F65, F74, F75, F76, F85, F95, F107, F110, F115, F123, F161, F220, F227, F254, F255, F258, F263.

Generally, the Burnett Defendants were agents of Signal in helping facilitate the concerted labor trafficking scheme. Compl. ¶ 90.  This activity included the Burnett Defendants entering into contracts with various recruiter defendants and Plaintiffs for labor to be provided at Signal's labor camp in Texas. *Id.*, ¶¶ 110, 112, 125-126.

The Burnett Defendants and their co-defendants made false promises to Plaintiffs that they would receive green cards for permanent residence in the United States, either right away or after traveling to the U.S. on an H-2B visa, and that green cards would be made available to their families. *Id.*, ¶¶ 8, 100, 115.   The recruiters and the Burnet Defendants made these representations

even though they knew or had reason to know that such visa extensions and green card applications would not be bona fide, valid or lawful under United States immigration law and even though Signal did not have the intention to apply for visa extensions or green cards on behalf of Plaintiffs. *Id.*, ¶ 115, 367.

Despite this, the Burnett Defendants continue to demand and be paid exorbitant fees and continued to facilitate the transportation of hundreds more Indian workers, including Plaintiffs, to Signal worksites in Texas and Mississippi because it was in Signal's financial interest to do so. *Id.* at ¶¶ 176, 197, 198.  The Burnett Defendants repeatedly extracted additional financial payments from Plaintiffs to continue in their recruitment process. *Id.* at ¶ 176.

The Burnett Defendants continued to communicate with Plaintiffs after having lured Plaintiffs to Texas in furtherance of the scheme alleged in the Complaint.   The Complaint clearly alleges the Burnett Defendants communicated with Signal in order to develop a response to Signal's concerns about workers' organizing efforts at the labor camps. *Id.* at ¶ 232, 275.  The Burnett Defendants expressly agreed to take steps to discourage worker organizing efforts and to ensure that Plaintiffs and other Indian H-2B workers would continue to work at Signal's labor camp without complaint, as well as to prevent Plaintiffs from attempting to exercise their legal rights. *Id.* at ¶ 232.

As shown by the Complaint's detailed allegations, the Burnett Defendants were critical to implementing the fraudulent and illegal labor trafficking scheme, which continued after the Plaintiffs were subjected to the conditions of Signal's labor camp in Orange, Texas.

## C.   PROCEDURAL BACKGROUND

Twelve individuals who had been trafficked into this country, mostly into Signal's facility in Mississippi, filed a putative class action in New Orleans in 2008. Relevant to the claims in this

action, while Plaintiffs were putative class members, the defendants in the David case defeated class certification on the grounds that the trafficking, RICO, civil rights and state law contract and fraud claims were not appropriate for class treatment because individual issues predominated. *See David v. Signal, Int'l, LLC*, 2012 U.S. Dist. LEXIS 114247 (E.D. La. Jan. 4, 2012).  That Court has not yet ruled on the collective action FLSA claims in the David case, which include opt-ins by the Plaintiffs in this case; the case has now been reassigned to Judge Morgan.  Accordingly, the Plaintiffs in this case had to file individual cases to preserve their claims.

The court in *David* issued an order explicitly tolling the statute of limitations for the federal claims of the putative class members not named in the *David* complaint. Order, *David*, No. 08-1220 (E.D. La. Aug. 28, 2013), ECF No. 1379.  The order tolled the applicable statutes through August 28, 2013. Further, the parties—including Burnett—agreed to toll the state law claims until May 3, 2012. Order, *David*, No. 08-1220 (E.D. La. Jan. 19, 2011), ECF No. 982.

Plaintiffs in the instant case sought counsel and elected to pursue their claims in this forum. These Plaintiffs allege causes of action under the following federal statutes: (1) The Trafficking Victims Protection Reauthorization Act of 2003; (2) Racketeer Influenced and Corrupt Organizations Act; (3) The Civil Rights Act of 1866; (4) The Ku Klux Klan Act of 1871.  The Plaintiffs also bring state law fraud, negligent misrepresentation and breach of contract claims under Texas state law, except for Plaintiff Gonna who brings his state law claims under Mississippi state law.

The Burnett Defendants executed waivers of service on February 19, 2014. Waiver, ECF No. 30 (Feb. 27, 2014).  The Burnett Defendants filed three separate motions on March 21, 2014 (ECF No. 31: motion to transfer venue; ECF No. 32: motion to dismiss pursuant to Rule 12(b)(2); and ECF No. 33: motion to dismiss pursuant to Rule 12(b)(6)).

### III.    LEGAL STANDARD

The Fifth Circuit views Motions to Dismiss under Rule 12(b)(6) with disfavor and rarely grant them.  *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).  Facts are construed liberally in favor of the plaintiffs and the court accepts well-pleaded facts as true. *Gordon v. JPMorgan Chase Bank, N.A.*, 505 Fed. Appx. 361, 362, 2013 WL 49587 (5th Cir. 2013) (citing *Harrington*).

Dismissal is inappropriate unless the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  To satisfy this standard, the complaint must provide more than conclusions, but it "need not contain detailed factual allegations." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011)).  Thus, the touchstone of the analysis of a motion to dismiss under Rule 12(b)(6) is "plausibility." The Complaint must allege enough facts to move the claim "across the line from conceivable to plausible." *Turner*, 663 F.3d at 775 (citing *Twombly*, 550 U.S. at 570, 127 S.Ct 1955).  Determining whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

### IV.    LEGAL ARGUMENT

### A.    PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS TO STATE PLAUSIBLE CLAIMS

As detailed in Plaintiffs' Complaint, the Burnett Defendants played an integral role in the labor trafficking scheme designed to recruit Plaintiffs for work at Signal based on false promises of permanent residence in the United States. The Burnett Defendants argue that Plaintiffs "have not stated any cause of action against Burnett beyond unsupported and unsupportable conclusions

and talismanic recital of statutory language, and even then by only general conclusory allegations as to all defendants." Mot. Dismiss, p. 1, ECF No. 33.  The Burnett Defendants' argument is baseless.  The Plaintiffs' Complaint pleads sufficient facts to state a plausible claim for each of the Federal Law Claims and Common Law Claims.  The Court must deny the Burnett Defendants' motion to dismiss.

The Burnett Defendants' primary argument is that Plaintiffs' allegations "do not demonstrate any illegal act or conduct by Burnett or any intent to commit an illegal act, much less any conspiracy by Burnett to traffic Plaintiffs or deprive them of their civil rights." ECF No. 33, p. 4.  Burnett further contends that the allegations simply show that Burnett "acted as an attorney, that he successfully completed and filed all necessary immigration documents to allow Plaintiffs to legally enter the United States…" ECF No. 33, p. 6-7.  Burnett's selective reading of the Plaintiffs' complaint and these broad, sweeping contentions are inconsistent with the allegation detailed in the Complaint and accompanying RICO Fraud Chart.

The Complaint and RICO Fraud Chart allege specific actions by Burnett that are illegal, harmed Plaintiffs in violation of federal and state laws. See Supra. Sec. II. B. Burnett argues that Plaintiffs have failed to state a claim for breach of contract.

Among other things, Plaintiffs have alleged that: Plaintiffs entered into contracts with Burnett and other agents with promises made to them regarding green cards and work opportunities in the United States. *See e.g.,* Compl. ¶ 112.  Pursuant to the contracts, Plaintiffs paid exorbitant fees. *See e.g.,* Compl. ¶ 116.  In the event Burnett did not succeed in securing green cards, the contract required that Plaintiffs receive a refund. *See e.g.,* Compl. ¶ 124.  Defendants did not process green cards and never returned any of the recruitment fees despite the contractual obligations. *See e.g.,* Compl. ¶¶ 124, 381.

Burnett further argues that the Federal Law Claims rely on conclusory allegations.  Burnett is mistaken.  The Complaint is replete with allegations showing that the Burnett Defendants worked hand-in-hand with Signal and the co-Defendants to perpetrate the scheme to traffic Plaintiffs to the United States to work at Signal.

Burnett acted as Signal's agent to recruit worker and apply for visas to employ guestworkers through the H-2B visa program. Compl. ¶ 90.  The Burnett Defendants coordinated with co-Defendants to recruit workers in India and the UAE and place ads. *Id.*, ¶¶ 4, 98, 128. Burnett promised Plaintiffs he would obtain green cards for them. *Id.*, ¶¶ 108, 110, 130. Burnett signed contractual agreements with Plaintiffs promising permanent residency, knowing full well that Signal did not intent to provide the Plaintiffs with permanent residency. *Id.*, ¶¶ 117, 130, 131. The Plaintiffs reasonably relied on Burnett's false representations and paid Burnett large sums of money. *Id.*, ¶¶ 112, 116, 161.  Burnett knowingly made misrepresentations to the state and federal government concerning Signal's labor needs in order to obtain approvals. *Id.*,  ]¶¶ 136  Burnett failed to disclose facts to the Plaintiffs regarding the nature of the H-2B visa, the employer's intention to extend the visa and seek green cards for Plaintiffs. *Id.*, ¶¶ 144, 145, 146, 147. Signal communicated with Burnett and other Agents after the Indian workers arrived in Texas, including seeking Burnett and other Agents' advice regarding what should be done to quell the Indian workers' organizing efforts. *Id.*, ¶¶ 232, 275.

The Defendants' entire illegal scheme would not have been possible without Burnett's fraudulent representations to USCIS and the state workforce agencies. Moreover, Plaintiffs would not have paid the exorbitant recruitment fees were it not for Burnett's misrepresentations regarding permanent residency.

As these and other allegations demonstrate, Burnett played an essential role in the labor trafficking scheme and worked hand-in-hand with the co-Defendants. Burnett's claims that the Complaint fails to plead facts demonstrating that he planned, acted in concert, or conspired with other Defendants in patently false. Accordingly, Burnett's motion to dismiss on these ground should be denied.

**B.      PLAINTIFFS' FEDERAL CLAIMS DO NOT DEPEND ON THREATS OF DEPORTATION.**

Burnett argues that Plaintiffs' Federal Law Claims depend on the notion that the threat of deportation constitutes involuntary servitude. Mot. Dismiss, p. 2, ECF No. 33.  This argument provides no basis for dismissal. Plaintiffs do allege that Plaintiffs were subjected to such threats. ¶ 240.  These allegations constitute only one of many facts that establish the fraudulent scheme and predicate acts for RICO and other federal violations set out in detail in the complaint.

Burnett's reliance on *Zavala v. Wal-Mart Stores, Inc.*, is inappropriate. 691 F.3d 527 (3rd Cir. 2012). In *Zavala*, the plaintiffs alleged violations of the Fair Labor Standards Act ("FLSA") and RICO against Wal-Mart. However, Wal-Mart did not contract directly with the plaintiffs, and the plaintiffs did not work exclusively for Wal-Mart. *Id.* at 531. In that case, the court stated that "[a]bsent some special circumstances, threats of deportation are insufficient to constitute involuntary inservitude," adding that "[t]he record demonstrates that Plaintiffs often switched jobs, freely moving to different employers in different cities." *Id.* at 541.  The plaintiffs in *Zavala* did not encounter the systemic coercion and threats of deportation faced by the Plaintiffs in this case.

Similarly, Burnett's reliance on *Valdez-Baez v. Decatur Hotels, L.L.C.* is misplaced. 622 F.3d 393 (5th Cir. 2010).  In that case, the issue was whether certain expenses paid by plaintiff-employees were for the benefit of the employer and constituted a violation of the FLSA. *Id.*

11

Indeed, federal courts have held that threats of deportation, coupled with forcing immigrant workers into prohibitive debt, deplorable living conditions, and abusive work environments constitute violations of federal law. *See, e.g., Camayo v. John Peroulis & Sons Sheep, Inc.*, No. 10-CV-00772, 2012 WL 4359086, at *4-5 (D. Colo. Sept. 24, 2012 (finding that threats of deportation constitute abuse of the legal process); *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 115 (D.D.C. 2012) (same); *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1143-46 (C.D. Cal. 2011) (finding that huge debt, coupled with threats of termination, deportation, and expiration of immigration documents forced plaintiffs to stay in jobs in violation of the Forced Labor statute); *Ramos-Madrigal v. Mediola Foresty Serv., LLC*, 799 F. Supp. 2d 958, 960 (W.D. Ark. 2011) (finding that confiscation of H-2B visa documents constitutes abuse of the legal process and of federal law). Some courts have even suggested that threats of deportation, without more, are sufficient to support such findings. *See, e.g., Camayo*, 2012 WL 4359086, at *4-5; *Kiwanuka*, 844 F. Supp. 2d at 115.

Here, threats of deportation coupled with Plaintiffs' other allegations are sufficient to support Plaintiffs' Federal Law Claims.  Under threats of deportation, Defendants, including Burnett, forced Plaintiffs to live in labor camps surrounded by barbed wire, where they worked in a deplorable and a discriminatory environment, and feared retaliation.

Burnett supported this scheme and aided his co-Defendants to place the Plaintiffs in fear of termination and deportation. Plaintiffs allege they were promised green cards by Burnett in exchange for substantial payments. Burnett knew that Plaintiffs would not receive the green cards. Accordingly, Plaintiffs pled that Burnett perpetrated fraud against Plaintiffs, and that fraud was perpetrated not simply by threats of deportation.

Plaintiffs' allegation must be accepted as true and Plaintiffs have alleged sufficient facts to state their Federal Law Claims.

## C.      THE STATUTES OF LIMITATIONS HAVE BEEN TOLLED.

Burnett argues that Plaintiffs' state law claims violate the statutes of limitations. Burnett neglects to inform the Court they consented to the tolling of these claims. Thus, not only has Burnett waived his right to assert that defense now, he may also be judicially estopped from doing so. Moreover, Burnett misinterprets Texas law, which supports this tolling.

The *David* court tolled Plaintiffs' federal and state law claims. Nevertheless, Burnett argues that Plaintiffs' state law claims violate the statute of limitations. Burnett fails to tell the Court that on January 19, 2011, the *David* court tolled the state law claims until May 3, 2012. *See* Order, *David* (E.D. La. Jan. 19, 2011), ECF No. 982 (tolling Plaintiffs' state law claims "until 120 days following the Court's final ruling on class certification"); *see also* Order, *David* (E.D. La. Jan. 4, 2012). ECF No. 1117 (denying class certification); Order, *David* (E.D. La. Aug. 28, 2013), ECF No. 1379, n. 4 (stating the court tolled the state law claims until May 3, 2012). Accordingly, even if Plaintiffs' claims accrued in 2008, as Burnett argues, the three-year statute of limitations for some state law claims did not begin running until 2012 at the earliest. Plaintiffs' claims are not time barred.

Moreover, as the *David* court notes in its order, Burnett *consented* to the tolling of the state law claims. Order, *David* (E.D. La. Jan. 19, 2011), ECF No. 982 ("Having considered Plaintiffs' motion and finding Plaintiffs' arguments persuasive [and] *upon the consent of … the Burnett Defendants* … Plaintiffs' motion is hereby granted." (emphasis added)).  Burnett should not be allowed to argue against the tolling of the statutes of limitations.  Because Burnett consented to the tolling, Burnett has waived his statute of limitations defense. *See De La Cruz v. Gulf Coast*

*Marine & Assocs.*, No. 09-CV-167, 2011 U.S. Dist. LEXIS 42715, at *45 (E.D. Tex. Apr. 20, 2011) (demonstrating that defendants can agree to waive the right to a statute of limitations defense). Also, based on that consent, the Court should find that Burnett is judicially estopped from asserting a statute of limitations defense. *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 397 (5th Cir. 2003) ("[A] party cannot advance one argument and then, for convenience or inconsistent gamesmanship after that argument has served its purpose, advance a different and inconsistent argument." (citing *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 818 (5th Cir. 2002)).  In the Fifth Circuit, judicial estoppel requires only that (1) "the position of the party to be estopped is clearly inconsistent with its previous one," and (2) the "party must have convinced the court to accept the previous position." *Id.* at 396. Both elements are present here: the *David* court accepted Burnett's consent to toll the statute of limitations on the state law claims, and now, inconsistently, Burnett requests that this Court ignore that consent.  Judicial estoppel is appropriate here because Burnett is attempting to "play [] fast and loose with the court." *Id.* (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)).

## D.      TEXAS LAW SUPPORTS THE TOLLING OF THE STATUTE OF LIMITATIONS FOR PLAINTIFFS' CLAIMS

Further, Texas law supports tolling of the statutes of limitations for Plaintiffs' claims. In *American Pipe & Construction Co. v. Utah*, the United States Supreme Court held that the filing of a class action tolls the statute of limitations during the pendency of the action, even if the class certification is later denied. 414 U.S. 538, 553 (1974). "[T]he  commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action suits." *Id.*

Relying on *American Pipe*, Texas courts also apply equitable tolling during the pendency of a related putative class action. In *Venture v. Banales*, the Texas Court of Appeals held that

"Texas…suspends the applicable statute of limitations as to all purported members of the class upon the filing of the class action," which means that "any time remaining on the statute of limitations of the class members' individual causes of action on the date of the filing of the lawsuit is restored and begins to run again on the date the class action is dismissed." 905 S.W.2d 469, 471-72 (Tex. App. 1994); *see also Beavers v. Metro. Life Ins. Co.*, No. G-07-00260, 2007 WL 3342540, at *6 (S.D. Tex. Nov. 8, 2007) (recognizing that Texas courts apply *American Pipe* to toll statutes of limitations applicable to individual claims when a class action is pending). In particular, Texas courts toll statutes of limitations when the previous putative class action raised the same claims against the same defendants, because the defendants have been given notice of the claims and of the potential individual plaintiffs. *See In re Norplant Contraceptive Prod. Liability Litig.*, 961 F. Supp. 163, 166 (E.D. Tex. 1977). For example, in *Norplant*, the court held that tolling was justified because the individual claims overlapped with the previous class action claims, and because the number of claimants was certain. *Id.* at 166; *see also Hall v. Variable Annuity Life Ins. Co.*, No. 12-20440, 2013 WL 4233103, at *2 (5th Cir. Aug. 15, 2013).

Here, Burnett has been put on notice of the claims, and the number of claimants is certain. The *David* plaintiffs asserted almost identical federal law claims (TVPA, RICO, Civil Rights Act, Ku Klux Klan Act) and state law claims (fraud, negligent misrepresentation and breach of contract) as asserted by the Plaintiffs individually in this case. The 590 individuals that made up the potential class in *David* included the Plaintiffs and Burnett knew the identities of the potential class members. On these facts, Texas courts would allow equitable tolling.

Burnett relies on two cases to support his argument: *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 758 (Tex. App. – Amarillo 1995); and *Newby v. Enron Corp.*, 542 F.3d 463, 472 (5th Cir. 2008). These cases are inapposite. In *Bell*, the court stated that "[t]he premise of the *American*

*Pipe* ruling is that a statute of limitations can be tolled while class allegations are pending, provided the defendant has notice of the type and potential number of the claims against it." *Bell*, 899 S.W.2d at 758. In *Bell*, most of the defendants were not named in the class action, leading the court to conclude that defendants had not received fair notice of the existence of the claim, and tolling should not be recognized. *Id. Bell* is entirely distinguishable from the facts in this case and other cases where the defendants received notice of the claim in the class action complaint. *See Norplant*, 961 F. Supp. at 166 (distinguishing *Bell* because in *Bell* the issue of tolling was not raised until a motion for reconsideration and new trial was filed, only one of the named defendants was named in the class action, the plaintiff waited 10 years to file her claim, and the class action involved a variety of other claims).

Burnett relies on *Newby* to assertion that Texas courts will not extend *American Pipe* to this situation. Mot. Dismiss, p. 14, ECF No. 33.  But in *Newby*, the court declined to apply *American Pipe* because there was "not [an] easily discernible class of plaintiffs," given that the state court case would include an additional 1200 plaintiffs. *Newby*, 542 F.3d at 466-467; Opinion and Order, *Newby v. Enron Corp.*, Civil Action No. H-01-3624 (S.D. Tex. Nov. 29, 2006).

The facts at bar in this litigation differ drastically from the plaintiffs' situation in *Newby*. Here, there are not over a thousand unidentified plaintiffs.  Here a limited number of identified plaintiffs, known to Burnett, seek to bring the same claims they brought in the class action. The Defendants have had fair notice regarding the types of claims and number and identity of claimants. Accordingly, equitable considerations mandate the tolling of the Plaintiffs' Common Law Claims.

## V.     CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that Burnett's Motion to

Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) be denied in its entirety.


Respectfully submitted this 7th day of April, 2014.

EQUAL JUSTICE CENTER

By: /s/ Christopher J. Willett
    Christopher J. Willett
    Texas Bar No. 24061895
    Kayvon Sabourian
    Texas Bar No. 24076824 (admitted by *pro hac vice*)

    EQUAL JUSTICE CENTER and
    TRANSNATIONAL WORKER RIGHTS CLINIC
    510 S. Congress Ave., Suite 206
    Austin, TX 78704
    Telephone: (512) 474-0007, ext. 107
    Facsimile: (512) 474-0008
    **Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of an electronic filing to all CM/ECF participants.


 /s/ Christopher J. Willett

Christopher J. Willett